NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

## AUGUST R. LINDEN, PETITIONER, v. COUNTY OF ESSEX, RESPONDENT.

Decided December 16, 1941.

For the petitioner, *Samuel R. Ball* · (*David Roskein,* appearing).

For the respondent, *Edwin Joseph O'Brien.*

\*     \*     \*     \*     \*     \*     \*

The petitioner testified that he had thought nothing of the accident when it happened, when he slipped trying to regain his balance he struck his head against the door jamb. He said he thought nothing of the occurrence at the time, did not report the accident to any one until the month following, when he was struck with a convulsive seizure. On suffering the second convulsive seizure, a short time thereafter, he claims that he notified one of the doctors at the plant of such occurrence. He states that he recalled that fact when a letter which he sent to Dr. Harmon, superintendent of the hospital, under date of May 26th, 1938, was shown to him and that refreshed his recollection. A perusal of the letter which was entered in evidence shows nothing whatsoever of any such notification, the letter which was signed by the petitioner, August R. Linden, shows that September, 1937, he saw Dr. Loeser of Newark and mentioned nothing to him about any accident. This is significant, in

view of the fact that in this same letter the petitioner states that Dr. Loeser, a Newark neurologist, asked him whether he had received a blow on the top of the head and he told Dr. Loeser that he had not. The petitioner stated that he had suffered with a pain across the top of his head ever since the time he had struck it and that it was constantly with him. Yet in this very letter which he signed to the superintendent of respondent's hospital under date of May 26th, 1938, he admits that even though in September, 1937, when he was asked by Dr. Loeser, who examined him, whether he had received a blow to the head, he answered Dr. Loeser that he had not.

It was further stipulated that Dr. W. F. Bennett and Dr. McBride, if produced, would testify that they knew of no accident to the petitioner and had not treated him for any accident, that the first they heard of an accident was some time in the fall of 1937, when he claimed that he had sustained an accident.

Furthermore, a letter of Dr. L. G. Guyer, a resident physician of the respondent's hospital where petitioner was employed, stated that petitioner did not report to him until the month of November, 1937, that he had claimed to have sustained any such accident.

A portion of the hospital records were introduced and marked R-7, which showed that in March 9th, 1937, petitioner was admitted to the infirmary for a rash and that there was no evidence of any trauma or accident. Another portion of the records, dated May 28th, 1937, were introduced in evidence, and marked Exhibit R-6, where petitioner had an epileptiform furor, and possible hypertensive encephalopathy and no mention of accident or trauma. Another portion of the records introduced, and marked R-5, said portion also covering May 28th, 1937, and showing that petitioner had a positive tuberculosis and that he had an epileptic convulsion and no mention made of trauma or accident.

The petitioner was shown a two-page statement dated June 8th, 1938, and identified the signature on the bottom of both statements as his. He was asked to read the first page, which he did, and said that it was entirely correct. Then he was

examined about the second page, which contained in part this statement:

"It was in September, 1937, that I got the idea that these attacks were the result of the blow I had received in February, 1937. I spoke to Dr. Harmon about it during the latter part of May, 1938" (over a year later. That was marked *R*-3 in evidence).

Another paper was shown to the petitioner dated June 16th, 1938, marked *R*-2 in evidence, and he identified his signature to that, which statement contained the information that he was injured the end of February, 1937, and in answer to this question "12, when did you report this accident?" the answer was "November 17, 1937."

Dr. Louis H. Loeser's report, dated July 18th, 1938, was offered in evidence and marked *Exhibit R*-4, in which petitioner admitted to the doctor that he had told the doctor in the summer of 1937, in answer to the question as to whether or not he had received any blow to the head, that he had no such accident.

Then there was introduced in evidence a letter from the Neurological Institute of New York, dated June 29th, 1937, marked *R*-1 in evidence, addressed to Dr. Bennett of the Essex Mountain Sanatorium, Verona, New Jersey, and signed by R. J. Masselink, M.D., superintendent at the Neurological Institute in New York, with reference to the history and the treatment and diagnosis of the petitioner. There is no mention of any accident or trauma such as alleged by the petitioner and in the last paragraph the following statement appears: "* * * we cannot make a definite diagnosis at this time, although we suspect that the patient probably has either an idiopathic epilepsy or an intracranial tumor of the tuberculoma type."

Without going into the merits of the case and solely as the result of the stipulations and evidence and testimony produced before me, I do find as a fact that the petitioner did not report any such accident as he alleges occurred in February, 1937, to the respondent or any one in authority there until the late fall of 1937, or considerably more than ninety days after the accident was alleged to have occurred.

I do further find from the said testimony, evidence and stipulations adduced before me that the respondent had no knowledge of any such occurrence during the employment of the petitioner by the respondent.

Petitioner having failed to establish that the respondent received notice within the statutory time or had knowledge within the statutory time, judgment is hereby entered in favor of the respondent and the petition dismissed.

JOHN C. WEGNER,
*Deputy Commissioner.*